## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 12-cv-02515-JLK

FANG TIAN,

      Plaintiff,

v.

NEWMONT INTERNATIONAL SERVICES LIMITED, a Delaware Corporation,

      Defendant.

---

## OPINION AND ORDER ON MOTION FOR JUDGMENT AS A MATTER OF LAW AND MOTION TO AMEND THE JUDGMENT

---

### 1.   Motion for Judgment as a Matter of Law or a New Trial – Rule 50(b)

Defendant has moved for judgment as a matter of law or for a new trial under Fed. R. Civ. P. 50(b).  Doc. 113.  Under Rule 50(b), a party is entitled to judgment as a matter of law "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 797 (10th Cir. 2007). "Unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion, judgment as a matter of law is improper." *Greene v. Safeway Stores, Inc.*, 98 F.3d 554, 557 (10th Cir. 1996) (citation omitted).  A new trial may be granted if the "claimed error substantially and adversely" affected a party's rights. *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1217 (10th Cir. 2008) (quoting *Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1297 (10th Cir. 1998)).

Defendant argues that it is entitled to judgment as a matter of law because the jury was not presented with legally sufficient evidence of reliance, causation, or damages.  Doc. 113 at 1. According to Defendant, Plaintiff was told in January of 2011 that Defendant would begin

processing her green card in March, and did not learn that the green card process would not actually be moving forward until July of 2011, when Defendant notified Plaintiff that her position was being eliminated.[1]  Defendant argues that this caused, at best, a six-month delay in Plaintiff's search for a new employer to sponsor her green card, and that the evidence at trial was insufficient to conclude that this six-month delay had any impact on Plaintiff's ability to find a green card sponsor before the expiration of her H1B visa.  Doc. 113 at 14-18.  Defendant also argues that the damage award was speculative and uncertain, and that Plaintiff's reliance on her supervisor's statements regarding her green card application was unreasonable as a matter of law.  *Id*. at 18-21.

With respect to the issue of whether the six-month delay cost Plaintiff the opportunity to obtain a green card, I cannot agree that "the evidence points but one way" and is "overwhelmingly preponderant in favor" of Defendant's position.  *PVNF, L.L.C.*, 487 F.3d at 797; *Greene*, 98 F.3d at 557.  Plaintiff's H1B visa was set to expire on November 2, 2012, so that in January of 2011, Plaintiff had approximately 22 months remaining on the visa, and by July of 2011, Plaintiff had approximately 15 months remaining.  Trial Tr. 322:16-23.   Both Defendant's and Plaintiff's respective experts testified that the "best practice" is to begin an application for a green card 18 months before the expiration of the H1B visa.  Trial Tr. at 243:8-22; 245:2-246:5; 429:12-430:5.  Plaintiff's expert testified the process of obtaining a green card is an extensive and expensive one, and that he will require an employer to sign a release before attempting to begin the process with 13 months left because of the risk that the process will not be completed before the employee is forced to leave the country.  *Id*. at 250:4-22.  Defendant's human resources representative also

---

[1] Defendant makes much of the fact that "undisputed expert testimony established that the application process was required by law to stop when Newmont decided to eliminate Plaintiff's position in July 2011."  Doc. 113 at 2.  But Defendant was not required to eliminate Plaintiff's position, and its decision to do so does not in any way excuse the alleged breach of Defendant's promises and representations regarding Plaintiff's green card application.  *See* Doc. 40 at 26-27.

testified that beginning Plaintiff's green card process in July of 2011 would have been "cutting it pretty close." *Id.* at 207:20-209:7. Finally, Plaintiff testified that she was informed by Bechtel, who hired Plaintiff in August 2012 after she had left Newmont, that they would not sponsor her green card due to timeliness issues because she had only 12 months remaining on her H1B visa.[2] *Id.* at 312:19-314: 16. Although not overwhelming, this evidence is enough to permit the jury to conclude that Newmont's misrepresentations caused Plaintiff to lose the opportunity to find another employer to sponsor her green card application.

Nor is the damage award "speculative and uncertain." Doc. 113 at 18. Plaintiff presented evidence that as a result of her failure to obtain a green card, after 12 months at Bechtel in Houston she was forced to return to China, where she continued her employment with Bechtel and made approximately $50,000 less per year. Trial Tr. at 316:20-317:2; 320:2-5. The testimony of Plaintiff's expert also indicated that Plaintiff would have an approximately one in three chance of receiving another H1B visa each year, *see* Doc. 123 at 12, so that the jury could permissibly conclude that Plaintiff would remain in China for a total of three years before being able to return to the United States. Thus, the jury's $150,000 award can be interpreted as consisting of $100,000 in back pay for the period August 2013 through August 2015, and $50,000 in lost wages going forward until Plaintiff is presumably able to return to the United States. This evidence, and the inferences therefrom, is sufficient to sustain the damages award. *See Roberts v. Adams*, 47 P.3d 690, 697 (Colo. App. 2001) (plaintiff claiming damages must submit "substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage").

Defendant's final argument is that Plaintiff's reliance on her supervisor's representations

---

[2] Defendant argues that this testimony was hearsay, but it was admitted under F.R.E. 807.

regarding her green card application was unreasonable.  Doc. 113 at 20-21.  This argument is based on Plaintiff's purported sophistication and her failure to undertake any investigation of the progress of her green card application.  *Id*.  However, there was evidence at trial that Defendant's human resources representative would have told Plaintiff to consult her supervisor if she had asked about the status of her green card application, Trial Tr. at 206:7-207:2, and that Plaintiff's supervisor was ultimately responsible for whether her application would go forward.  *Id*. at 206:12-207:2.  It was for the jury to consider this evidence along with evidence of Plaintiff's sophistication and lack of investigation, and to decide whether Plaintiff's reliance was reasonable.  *See Varady v. White*, 595 P.2d 272, 273 (Colo. App. 1979) ("[Q]uestions of misrepresentation and reliance are questions of fact.").

### 2.      Motion to Reduce Judgment – Rule 59(e)

Defendant has also moved to reduce the amount of the judgment under Rule 59(e), arguing that the punitive damage award does not comply with C.R.S. §13-21-102.  Doc. 114 at 1.  The jury awarded Plaintiff $100,000 in damages on her negligent misrepresentation claim, $150,000 in damages on her fraudulent misrepresentation claim, and $500,000 in punitive damages.  Doc. 102-3.  The Court subsequently reduced the jury's award by $100,000 on the grounds that the two claims were based on the same facts and the damages were duplicative.  *See* Doc. 105.  The final judgment therefore awards Plaintiff $150,000 in compensatory damages and $500,000 in punitive damages.  Defendant has moved pursuant to Fed. R. Civ. P. 59(e) to eliminate the punitive damage award or to reduce it to $150,000, pursuant to C.R.S. §13-21-102, which provides:

> (1)(a) In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable exemplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party.

4

(b) As used in this section, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.

…

 (2) Notwithstanding the provisions of subsection (1) of this section, the court may reduce or disallow the award of exemplary damages to the extent that:

(a) The deterrent effect of the damages has been accomplished; or
(b) The conduct which resulted in the award has ceased; or
(c) The purpose of such damages has otherwise been served.

(3) Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:

(a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or

(b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

The parties do not dispute that C.R.S. §13-21-102 governs the punitive damages award.

Doc. 114 at 2; Doc. 122 at 3.  Defendant argues that the punitive damages award should be

eliminated entirely because the evidence at trial did not establish "fraud, malice, or willful and

wanton conduct" as the misrepresentations regarding Plaintiff's green card were an "isolated

incident" and there is "no evidence that Defendant acted maliciously or with an intent to injure" the

Plaintiff, Doc. 114 at 5, and in any event should be reduced to the amount of actual damages under

§ 13-21-102(1)(a).  Doc. 114 at 6.   Plaintiff argues that the Court should allow the punitive

damages award under § 13-21-102(3)(a) because Juan Pablo Reyes' refusal to give yes or no

answers in response to certain questions at trial constitute a "continuation of the same tortious and

deceitful conduct" at issue in the case.  Doc. 122 at 4.  Plaintiff also argues that the evidence

establishes "willful and wanton conduct" because "Mr. Reyes deliberately misled Plaintiff on

multiple instances by withholding information, and by being untruthful with Plaintiff." Doc. 122 at 6-7.

I will reduce the punitive damages award to $150,000 pursuant to C.R.S. §13-21-102(1)(a). In making its punitive damage award, the jury expressly found that "Newmont acted in a fraudulent manner in causing Ms. Tian's damages," and that "Newmont acted in a willful and/or wanton manner in causing Ms. Tian's damages," Doc. 102-3 at 3-4. In addition, the jury expressly found each of the elements of fraud. *Id*. at 2-3. Mr. Reyes testified that he had been through the green card process himself, Trial Tr. at 34:2-35:15, that he was aware of the deadlines and the stakes involved for Plaintiff, and the jury found that he nevertheless made misrepresentations to Plaintiff regarding her green card application during the critical time frame for moving the process forward. This satisfies the "circumstances of fraud, malice, or willful and wanton conduct" requirement of C.R.S. §13-21-102(1)(a). *See Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005) ("Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13–21–102 are met.").

Plaintiff also argues that the Court has discretion to allow a punitive damages award of up to three times Plaintiff's actual damages under C.R.S. §13-21-102(3)(a) because Mr. Reyes' testimony at trial constituted a continuation of "the behavior . . . which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case." C.R.S. §13-21-102(3)(a); Doc. 122 at 3. Plaintiff points to the following questions and answers, which prompted the Court to admonish Mr. Reyes to answer the questions yes or no:

> Q. Okay. Now, you understood at -- if your work visa expired, that means you would have to leave the United States and return back to Chile -- or Chile, excuse me; is that correct?
>
> A. That would be correct. Which in reality we weren't opposed to since we were

both from Chile, my wife and I –

…

Q. Okay. But that wasn't part of my question, all right?  My question to you is:
Not, you know, whether you felt that you were making a promise to her or not --
and we're going to get into that -- my question to you is: Did you understand -- it
sounds like what you understood that Ms. Tian wanted from Newmont is are they
going to advocate for her to get a green card sponsorship? Is that right?

A. That's the way I understood it and, therefore, my response back was that I
didn't -- I wasn't fully aware of what the process was, so I needed to go through
that to work with her.

…

Q. I understand that's your position, sir, but my question to you was: You didn't
convey in this e-mail to Ms. Tian the reservations you just testified to in front of
this jury? You didn't communicate those reservations – or at least in this e-mail,
or at least in January of 2011; isn't that true?

A. I didn't convey that but I didn't convey we would support a green card either.

…

Q. Well, you say you never had a chance to do it. You certainly had the
opportunity, at least in an e-mail in January 2011, to explain to her that, Look,
Ms. Tian, you know, there's a process here. I'm not comfortable at this point in
time endorsing you. I need to talk to HR. Let me look into this further. You didn't
explain that to her in writing or verbally in January 2011, did you?

A. I didn't because it was the first time she approached me formally on the subject
and, again, I wasn't ready to, via e-mail --

Trial Tr. at 32:7-12, 44:7-17, 49:3-10, 62:2-12.  The "behavior . . . which is the subject of

the claim" is Mr. Reyes' misleading responses and material omissions regarding the status of

Plaintiff's green card application in the first half of 2011.  That behavior could not have continued

after Plaintiff learned that Newmont would not sponsor her green card and that her position would

be eliminated in July of 2011.  I find that Mr. Reyes' editorializing regarding his communications

with Plaintiff are not a continuation of that conduct, but rather an inappropriate after the fact

attempt to justify that conduct. *See Martin v. Union Pac. R. Co.*, 186 P.3d 61, 72 (Colo. App. 2007) *reversed on other grounds*, 209 P.3d 185 (Colo. 2009) (finding defendant's testimony regarding his current opinion about events at issue was not "conduct during the pendency of the case" under §13-21-102(3)(a)).

> ### 3.      Prejudgment Interest

Plaintiff argues that she is entitled to pre-judgment interest pursuant to C.R.S. § 5-12-102, which provides:

> [W]hen there is no agreement as to the rate thereof, creditors shall receive interest as follows:
>
> (a)      When money or property has been wrongfully withheld, interest shall be an amount which fully recognizes the gain or benefit realized by the person withholding such money or property from the date of wrongful withholding to the date of payment or to the date judgment is entered, whichever first occurs; or, at the election of the claimant…

Plaintiff argues that she is entitled to pre-judgment interest (although she does not take a position on when it should accrue) because "Defendant's withholding information Plaintiff needed to obtain a Green Card was tantamount to denying her access to money and/or property." Doc. 110 at 4.   Defendant responds that it is not a "creditor" and that a six-month delay in seeking another employer to sponsor her green card is not "money or property" within the meaning of the statute. Doc. 112 at 4-6.

I find that Plaintiff is entitled to prejudgment interest.  Section 5-12-102 is to be liberally construed, *see Mesa Sand & Gravel Co. v. Landfill, Inc.*, 776 P.2d 362, 365 (Colo. 1989), and "victims of tortious conduct are clearly entitled to prejudgment interest under [§ 5-12-102]." *Estate of Korf v. A.O. Smith Harvestore Products, Inc.*, 917 F.2d 480, 486 (10th Cir.1990); *see Keller v. A.O. Smith Harvestore Products, Inc.*, 951 F.2d 1259 (10th Cir. 1991) (unpublished) (reversing denial of prejudgment interest on negligent misrepresentation claim under § 5-12-102). The "money or property" at issue is the wages Plaintiff lost by having to return to China instead of

maintaining her employment in the United States, not the six month delay in seeking a new employer to sponsor her green card.

Prejudgment interest is measured from the date of the "wrongful withholding," i.e., the date that Plaintiff's damages were measured. *See Goodyear Tire & Rubber Co. v. Holmes*, 193 P.3d 821, 827 (Colo. 2008). As discussed above, I interpret the jury's $150,000 award to include $100,000 in lost wages for the period from August 2013 through August 2015 and $50,000 in lost wages going forward from August 2015. Accordingly, Plaintiff is entitled to prejudgment interest on the $100,000 measured periodically as that money would have been earned from August 2013 through August 2015. *See Reed v. Mineta*, 438 F.3d 1063, 1067 (10th Cir. 2006).

In sum, for the reasons given above, Defendant's motion for judgment as a matter of law or for a new trial under Fed. R. Civ. P. 50(b) (Doc. 113) is **DENIED**. Defendant's motion to alter or amend the judgment (Doc. 114) is **GRANTED IN PART** and **DENIED IN PART**, and the jury's punitive damages award of $500,000 is reduced to $150,000 pursuant to C.R.S. § 5-12-102(1)(a). The Plaintiff is **ORDERED** to submit a new proposed form of judgment, including a calculation of prejudgment interest, in accordance with this opinion on or before March 4, 2016.

Dated: February 18, 2016                    *s/ John L. Kane*
                                            Senior U.S. District Judge